The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 23-cr-00142-TL |
| Plaintiff, | MOTION TO DISMISS CHARGE UNDER 18 U.S.C. § 922(g)(1) |
| v. | |
| KEITH RUSSELL, | |
| Defendant. | |

## I.   RELIEF REQUESTED

Defendant Keith Russell respectfully moves the Court to dismiss the charge of Unlawful Possession of a Firearm under 18 U.S.C. § 922(g)(1).[1] As applied to Mr. Russell, the current charge violates Mr. Russell's rights under the Second Amendment to the United States Constitution. In addition, 18 U.S.C. § 922(g)(1) is unconstitutional on its face.

---

[1] Also pending is Defendant's Motion to Suppress and for *Franks* Hearing, Dkt. 35, which is set for evidentiary hearing on September 5, 2024. The Court's rulings on this motion may render that motion and the planned stipulated facts trial moot.

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 1 of 14



## II.  BACKGROUND

Mr. Russell is charged with one count of Unlawful Possession of a Firearm, under 18 U.S.C. § 922(g)(1). Mr. Russell allegedly possessed a pistol under the seat of his vehicle during a traffic stop. There is no allegation that he attempted to use the firearm in any way during the traffic stop or at any other time.[2] The underlying bases listed in the indictment (Dkt. 15) are non-violent convictions for "Conspiracy to Deliver a Controlled Substance, in King County Superior Court, under case number 19-1-07708-1, on or about April 5, 2021" and "Possession of Oxycodone with Intent to Distribute, in the United States District Court for the Western District of Washington, under case number CR10-264 MJP, or on about January 27, 2011." Dkt. 15.

For the reasons explained below, neither of these prior convictions can constitutionally support prosecution under 18 U.S.C. § 922(g)(1).

## III.  ARGUMENT

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A pretrial motion is proper when "it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The issues raised by this Motion are purely legal. While Mr. Russell reserves the right to dispute his alleged possession of a firearm should the case proceed to trial, he requests that this Court consider the Motion on the assumption that the allegation that he possessed a firearm are true for the limited purpose of deciding this Motion.

**A.  The Government Bears the Burden of Establishing the Validity of 18 U.S.C. § 922(g)(1)**

---

[2] The alleged facts giving rise to this prosecution are discussed at length in Mr. Russell's Motion to Suppress Evidence and for *Franks* Hearing, Dkt. 35, and the accompanying declaration and exhibits, Dkt. 36; 36-1 through 36-17.

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 2 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

In *New York Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), The Court held that it is the government's burden to "affirmatively prove that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. The Court recently emphasized the burden of proof, confirming "when a firearm regulation is challenged under the Second Amendment, the *Government must show* that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *United States v. Rahimi,* 602 U.S. ___ (2024)(Slip Opinion at 4), citing *Bruen*, at 2127 (emphasis added). Thus, "[w]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *Rahimi,* at 6-7, citing *Bruen*, at 2127. The Government here bears the burden of establishing the Second Amendment validity of 18 U.S.C. § 922(g)(1) on its face and as applied to Mr. Russell.

  **B. The Supreme Court in *Bruen* established a two-step test that includes no interest-balancing or policy considerations.**

In *Bruen*, the Supreme Court rewrote the test for determining whether a firearm restriction violates the Second Amendment. Previously, courts applying *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), used a two-step test. First, courts asked whether the regulated conduct fell within the scope of the Second Amendment. If it did, then the burden shifted to the government in the second step, to establish whether the government's interest in the restriction outweighed the infringement on the individual. *See United States v. Chovan*, 735 F.3d 1127, 1134–37 (9th Cir. 2013), *abrogated by Bruen*, 142 S. Ct. 2111 (discussing cases).

  *Bruen* got rid of the second step. It held that "a constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." 142 S. Ct. at 2129 (internal quotations omitted). Now, for a law to survive a Second Amendment challenge, the

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 3 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

government must "identify an American tradition" justifying the prohibition under the first step. *Id*. at 2138. If it cannot, courts may no longer apply a "means-end scrutiny" to uphold the law under the second step. *Id*. at 2125, 2138. Instead, the inquiry ends, and the law is unconstitutional.

Following *Bruen*, the "standard for applying the Second Amendment" now requires courts to do the following: if the Second Amendment's "plain text" covers an individual's conduct, courts must presume the Constitution "protects that conduct." To rebut this, the government must show that any restriction is "consistent with the Nation's historical tradition of firearm regulation." If the government cannot do so, the law is unconstitutional. *Id*. at 2129–30 (internal quotations omitted).

To guide this inquiry, *Bruen* noted that "not all history is created equal." *Id*. at 2136. Because "constitutional rights are enshrined with the scope they were understood to have when the people adopted them," this analysis is tethered to the tradition in place when "[t]he Second Amendment was adopted in 1791; [or when] the Fourteenth [Amendment was adopted] in 1868." *Id*. at 2136. The Ninth Circuit has echoed *Bruen*, holding that this points courts to historical sources "close in time to 1791 (when the Second Amendment was ratified) or 1868 (when the Fourteenth Amendment was ratified)." *Teter v. Lopez*, 76 F.4th 938, 948 (9th Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2136).

Furthermore, courts "must look to the '***how*** and ***why***" of the two regulations; that is, 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry.'" *Teter*, 76 F.4th at 951 (quoting *Bruen*, 142 S. Ct, at 2132–33 (cleaned up by *Teter*) (emphasis added).

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 4 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

The *Bruen* Court required heightened similarity when the challenged regulation addresses a long-standing problem that existed when the Second Amendment was enacted: when a regulation addresses a general societal problem that has persisted since the 18th century, the lack of a "distinctly similar" historical regulation addressing it is evidence that the regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the problem through materially different means, that is evidence that a modern regulation is unconstitutional. *Bruen*, 142 S. Ct. at 2131; *see also Teter*, 76 F.4th at 954 (quoting same).

*Rahimi* refined the *Bruen* analysis, clarifying that in this context "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi,* at 7, citing *Bruen*, 597 U.S. at 26-31. To be valid under the Second Amendment, a regulation must be "'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi,* at 7, citing *Bruen*, 597 U.S. at 29. *Rahimi* confirmed that "[w]hy and how the regulation burdens the right are central to this inquiry." *Id.*

### C. 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Russell

#### 1. Possessing a pistol is "bear[ing] arms" within the meaning of the Second Amendment

"At *Bruen* step one, the plain text of the Second Amendment covers Mr. [Russell's] conduct—possession of ordinary firearms []—and therefore presumptively protects him." *See United States v. Bullock*, 2023 WL 4232309, at 28 ("in the home" omitted). Mr. Russell allegedly possessed a handgun, which is an "arm" under the Second Amendment. *See Bruen*, 142 S. Ct. at 2132. There is no allegation that the gun was used to commit or further any crime or unlawful action.

**MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)**
U.S. v. Russell 23-cr-00142-TL
Page 5 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

The Ninth Circuit has recognized that the Supreme Court in *Bruen* took a purely textualist approach to this question:

> Applying the above standard, the first question in *Bruen* was "whether the plain text of the Second Amendment protects [the plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense." [] In answering it, *Bruen* analyzed only the "Second Amendment's text," applying ordinary interpretive principles. [] Because the word "'bear' naturally encompasses public carry," the Court concluded that the conduct at issue in *Bruen* (public carry) was protected by the plain text of the Second Amendment. []

*Teter*, 76 F.4th at 948 (quoting *Bruen* 142 S. Ct. at 2134–35, 2143) (internal citations omitted).

Here too, the conduct in question, possessing an ordinary firearm, is plainly covered by the Second Amendment's text. The Court in *Bruen* maintained holdings from earlier cases that the right to bear arms for self-defense is integral to the Second Amendment. In *Heller*, the Court struck down the District of Columbia's regulations banning handgun possession in the home and held that the Second Amendment protects the right to keep and bear arms in one's home for the purpose of self-defense. *Heller*, 554 U.S. at 635. In distinguishing the right to bear arms as independent from involvement in a militia, the Court explained that early "Americans valued the ancient right [and] most undoubtedly thought it even more important for self-defense and hunting." *Id*. at 599. Justice Scalia, writing for the *Heller* majority, even went so far as to describe the dissent's "assertion that individual self-defense is merely a 'subsidiary interest' of the right to keep and bear arms [as] profoundly mistaken." *Id*.

In *McDonald*, the Court struck down municipal ordinances similar to those in *Heller* and held "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." *McDonald*, 561 U.S. at 791. In doing so, the *McDonald* Court explained that after all, "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller*, [the Court] held that individual self-defense

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 6 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

is 'the *central component*' of the Second Amendment right." *Id*. at 767 (internal citation omitted) (emphasis in original).

Commenting on the importance of self-defense, the Court further explained that if the safety of "members of the community would be enhanced by the possession of handguns in the home for self-defense, then the Second Amendment right protects the rights of minorities and other residents of high-crime areas whose needs are not being met by elected public officials." *Id*. at 790.

Writing in a concurrence in *Bruen*, Justice Alito continued this theme and emphasized the importance of the individual's right to self-defense being effectuated by the right to bear arms, writing: "Some are members of groups whose members feel especially vulnerable. And some of these people reasonably believe that unless they can brandish or, if necessary, use a handgun in the case of attack, they may be murdered, raped, or suffer some other serious injury." 142 S. Ct. at 2158 (J. Alito, concurring).

The Ninth Circuit has reiterated the same principle: "The Second Amendment guarantees the right to keep and bear arms… including 'an individual's right to carry a handgun for self-defense outside the home[.]'" *Baird v. Bonta*, No. 23-15016, 2023 WL 5763345, at *5 (9th Cir. Sept. 7, 2023) (quoting *Bruen*, 142 S. Ct. at 2122) (internal citation to *Heller* omitted).

### 2. Mr. Russell is one of "the people"

The *Rahimi* opinion offers valuable clarification of who is among "the people" for the purpose of the Second Amendment. *Rahimi* "rejects the Government's contention" that legislatures can disarm anyone who is not "responsible." *Rahimi, at* 17. The Court observed that the term is "vague"; that such a dividing line does not "derive from our case law"; that while *Heller* and *Bruen* used that term, they did so simply to "describe the class of ordinary citizens

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 7 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

who undoubtedly enjoy the Second Amendment right"; and that those opinions "said nothing about the status of citizens who were not 'responsible'" because "[t]he question was simply not presented." *Id.* The same logic applies to prior dicta referring to "law-abiding" citizens.

Importantly, the government derived the "responsible" limitation it proposed in *Rahimi* from the same place that it derives its argued rule that "non-law-abiding" people can be disarmed: passages in *Heller* and *Bruen* that use those words.[3] The Court has now clarified that those passages in *Heller* and *Bruen* are dicta, and do not represent the holding of the Court. The *Rahimi* opinion had the plain opportunity to endorse that analysis, and instead rejected it. The Second Amendment is not a right reserved only to some ever-changing definition of "law-abiding, responsible citizens."

The *Rahimi* Court was similarly careful to limit the scope of its ruling that 18 U.S.C. § 922(g)(8)(C)(i) was not unconstitutional on its face or as applied to Mr. Rahimi: "[r]ather, we conclude *only thi*s: [a]n individual *found by a court* to pose a credible threat to the physical safety of another may be *temporarily* disarmed consistent with the Second Amendment." *Rahimi*, at 17 (emphasis added).

In addition to joining the *Rahimi* majority, Justice Gorsuch wrote separately to emphasize that the Court has never made any holding to approve the categorical restriction on bearing arms by any group deemed not "responsible" or "law-abiding" at the whim of state legislatures.[4] As Justice Gorsuch pointed out, the Court could not have decided the constitutionality of 18 U.S.C. § 922(g)(1) with its dicta in *Heller* or *Bruen*, because "Article III of the Constitution vests in

---

[3] But *see*: "[W]ith respect to [whom] the right to keep and bear arms" belongs, "[n]othing in the Second Amendment's text draws a . . . distinction" between those who are virtuous and those who are not. *See Bruen*, 597 U.S. at 32 (emphasis added).

[4] ("Nor do we purport to approve in advance other laws denying firearms on a categorical basis to any group of persons a legislature happens to deem, as the government puts it, 'not "responsible."' . . . Not a single Member of the Court adopts the Government's theory.") *Rahimi*, Gorsuch concurrence at 6.

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 8 of 14

[the] Court the power to decide only the 'actual cas[e]' before [it], 'not abstractions.'" *Rahimi*, Gorsuch concurrence at 6 (citation omitted). With this limitation of the Court's authority in mind, Justice Gorsuch cautions, "future litigants and courts" should not "read any more into our decision" than its narrow holding. *Id.* at 7.

In light of *Bruen* and *Rahimi,* the Ninth Circuit's prior analysis of this issue in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) is abrogated.[5] The *Vongxay* opinion did not grapple with the threshold textual inquiry whether the defendant was part of "the people" whom the Second Amendment protects, whether the weapon at issue was an arm within the meaning of the Second Amendment, or whether the proposed course of conduct fell within the Second Amendment's plain language. The *Bruen* and *Rahimi* opinions have announced a completely different standard that that on which *Vongxay* was based, making it no longer good law.[6]

### 3. There is no "distinctly" or "relevantly" "similar historical regulation" disarming people like Mr. Russell.

In *Bruen,* the Court held that in cases where "a challenged regulation addresses a general societal problem that has persisted since the 18th century," the historical inquiry is "fairly straightforward." *Bruen*, 142 S. Ct. at 2131. The government must identify a robust tradition of "distinctly similar" founding-era regulations. *Id*. If "the Founders themselves could have adopted" a particular regulation "to confront [a longstanding] problem," but did not do so, that is

---

[5] "Simply repeat[ing] *Heller*'s language" about the "presumptive[] lawful[ness]" of felon firearm bans will no longer do after *Bruen*. *See Pena v. Lindley*, 898 F.3d 969, 1007 n.18 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part) (citing *Vongxay*, 594 F.3d at 1115). *Bruen* expressly "require[s] courts to assess whether" § 922(g)(1), *id.* at 26, like "*any* regulation infringing on Second Amendment rights[,] is consistent with this nation's historical tradition of firearm regulation," *Perez-Garcia*, 96 F.4th at 1175 (citations omitted).

[6] Indeed, a panel of the Ninth Circuit has recently reached this conclusion, in an opinion not yet reduced to mandate. *United States v. Duarte,* 2024 WL 2068016, at *3 (Until then, we can no longer "assum[e]," by way of *Heller*'s footnoted caveat, the "propriety of [every] felon firearm ban" that comes before us. *See United States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016). "Nothing allows us to sidestep *Bruen* in th[is] way." *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th. Cir. 2023); see also Baird v. Bonta, 81 F.4th 1036, 1043 (9th Cir. 2023) ("*Bruen* clarified the appropriate legal framework to apply when a . . . statute [is challenged] under the Second Amendment.")

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 9 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

evidence the statute is unconstitutional today. *Id.* Both *Heller* and *Bruen* fell in this category: the laws challenged in those cases were aimed at a problem—"handgun violence, primarily in urban areas"—that existed at the founding, and the Court therefore required a tight fit between those laws and historical precursors. *Id. See also United States v. Prince*, 2022 WL 6968457 (S.D.W.Va., Oct. 12, 2022) (explaining 18 U.S.C. § 922(k)'s restriction on firearms with obliterated serial numbers addresses longstanding societal problem of "crime").

In *Rahimi*, however, the Court omitted the *Bruen* analysis of the Founders' knowledge of the societal problem at issue. The Court did not discuss whether to apply the "distinctly similar" standard in *Rahimi* at all. Instead, *Rahimi* simply used the "relevantly similar" standard to analyze the firearm prohibition based on a domestic violence order. *Rahimi*, at 7, 14. Because *Rahimi* omitted any discussion of the *Bruen* "distinctly similar" standard, it has not been overruled and should be applied to 18 U.S.C. § 922(g)(1).

Analysis of 18 U.S.C. § 922(g)(1) following *Bruen* shows that the statute's purpose was to address a "general societal problem that has persisted since the 18th century": public safety and crime control. *See* U.S. Statutes at Large, PL 90-351 § 1201, 82 Stat. 197 (1968). This is a perennial societal problem. *See, e.g.*, Randolph Roth & Cornelia Hughes Dayton, *Homicide Among Adults in Colonial and Revolutionary New England, 1630-1797*, The Ohio State University, Criminal Justice Research Center, 2009[7] (compiling data regarding hundreds of homicides in early American colonies leading up to and including the time the Second Amendment was enacted); John D. Bessler, *Foreword: The Death Penalty in Decline: From Colonial America to the Present*, 50 Crim. L. Bull. 245 (2014) (detailing a variety of crimes,

---

[7] https://cjrc.osu.edu/research/interdisciplinary/hvd/united-states/colonial-revolutionary-new-england

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 10 of 14



criminal codes, and punishments in U.S. colonies prior to the ratification of the Second Amendment).

Because the problem being addressed existed in 1791 and 1868, a *Bruen* analysis requires the government to demonstrate a "distinctly similar" historical tradition of firearm regulation at those times to justify 18 U.S.C. § 922(g)(1). *See Bruen*, 142 S. Ct. at 2136; *Teter*, 76 F.4th at 954. However, for present purposes, it is irrelevant whether 18 U.S.C. § 922(g)(1) is held to *Bruen*'s "distinctly similar" standard or the "relevantly similar" standard used in *Rahimi* without discussion: there are no "relevantly similar" historical regulations, let alone any that are "distinctly similar."

In *United States v. Chovan,* 735 F.3d 1127, 1137 (9th Cir. 2013)*,* the Ninth Circuit noted that the "first federal firearm restrictions regarding violent offenders were not passed until 1938, as part of the Federal Firearms Act." *Chovan,* 735 F.3d at 1137. In this regard, the court cited C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?,* 32 Harv. J.L. & Pub. Pol'y 695, 698, 708 (2009), observing that "one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I." *Id.* Similarly, "[T]he Founding generation *had no laws* limiting gun possession by . . . people convicted of crimes," Adam Winkler, *Heller's Catch-22*, 56 UCLA Law Rev. 1551, 1563 (2009) (emphasis added).

Moreover, no relevantly similar historical regulation can support a lifetime ban on bearing arms for the particular predicate offenses that form the basis of Mr. Russell's charge, for the simple reason that those offenses did not exist in 1791 at the time of the ratification of the Constitution, or in 1868 at the time of the ratification of the Fourteenth Amendment.

In the Founding Era and in 1868, there was effectively no regulation of narcotics:

> Various preparations and derivatives of opium were freely available and widely used. Several states had statutes governing the sale of narcotics, and many

> municipalities forbade opium smoking, but these laws were only sporadically enforced. In practice just about anyone could secure pure drugs with little bother and at modest cost. Pharmacists even delivered drugs, dispatching messenger boys with vials of morphine to houses of high and low repute.

*See* Gerstein, D. R., & Harwood, H. J. (Eds.). (1992). *Treating drug problems: Volume 2: Commissioned papers on historical, institutional, and economic contexts of drug treatment*. Committee for the Substance Abuse Coverage Study, Division of Health Care Services, Institute of Medicine. National Academy Press: Washington, D.C., at 2.

The Founders were keenly aware of the existence of drugs. Elizabeth Kelly Gray, *Habit Forming: Drug Addiction in America*, 1776-1914, at 20 (2023). Senator John Randolph of Virginia was a user. *Id*. at 20-21. Senator Robert Goodloe Harper's mother-in-law died of laudanum dependency. *Id*. at 21. Founding Father Rufus King, also a senator, wrote letters to his doctor lamenting his sister's opium dependency, including how it impaired her ability to care for her children. *Id*. Laudanum even held Thomas Jefferson in its grip after he left the presidency. *See* John M. Holmes, *Thomas Jefferson Treats Himself: Herbs, Physicke, & Nutrition in Early America* 35-36 (1997). In a letter, Jefferson stated that "with care and laudanum I may consider myself in what is to be my habitual state." Letter from Thomas Jefferson to Robey Dunglison (Nov. 17, 1825), in *The Jefferson-Dunglison Letters* 41, 42 (John M. Dorsey ed., 1960).

Despite the knowledge and widespread use of narcotics since before the Founding Era, prohibition of possession and distribution of drugs did not begin until after the turn of the 20th Century. *See* Smoking Opium Exclusion Act of 1909, Pub. L. No. 60-221, 35 Stat. 614; *see also* Harrison Narcotics Tax Act, Pub. L. No. 63-223, 38 Stat. 785 (1914). At all times relevant to the ratification of the Constitution and the Fourteenth Amendment there were no crimes in existence relating to the distribution of narcotics. Thus, it cannot be said that there is a "relevantly similar historical regulation" that would justify the lifetime curtailment of Second Amendment rights for

**MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 12 of 14**

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

all those who have ever engaged in distributing narcotics. Similarly, there is no "distinctly similar" regulation. Under either standard, 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Russell.

### D. 18 U.S.C. § 922(g)(1) is facially unconstitutional because it applies lifetime disarmament to all "felons"

In *Rahimi*, the Court held that 18 U.S.C. § 922(g)(8)(C)(i) is constitutional, in part, because the statute's "restriction was temporary as applied to Rahimi," i.e., it applied only as long as the protective order was in effect. *Rahimi*, at 14. This means the Supreme Court considers the length of a Second Amendment deprivation to be important in the historical-analogue analysis. In marked contrast, 18 U.S.C. § 922(g)(1) creates a lifetime ban on possessing *any* firearms by people convicted of *any* felony at *any* time. In more than two years of post-*Bruen* litigation, the government still has not identified a single Founding-era law that imposed a permanent, lifetime ban on firearm possession.

Indeed, there are no historical examples of this country pursuing lifetime disarmament prior to the twentieth century or even before the passing of 18 U.S.C. § 922(g)(1) in 1968. As clearly indicated in the language of the Second Amendment and the history since its passing, the framers did not intend to revoke Constitutionally-conferred rights for life based on *any* previous "felony" conviction.[8] In the absence of any relevant historical justification for a universal lifetime revocation of Second Amendment rights, 18 U.S.C. § 922(g)(1) is facially unconstitutional.

---

[8] *See Kanter v. Barr*, 919 F.3d 437, 466 (7th Cir. 2019)(Barrett, J., dissenting); *id.* ("[Section 922(g)(1)] includes everything from . . . mail fraud, to selling pigs without a license in Massachusetts, redeeming large quantities of out-of-state bottle deposits in Michigan, and countless other state and federal offenses.")

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 13 of 14



## IV. CONCLUSION

Both on its face and as applied to Mr. Russell, 18 U.S.C. § 922(g)(1) is unconstitutional because there is no "distinctly similar" or "relevantly similar" historical support for a universal lifetime firearm ban on all "felons," let alone for offenses that did not even exist at the relevant times. Mr. Russell respectfully asks the Court to dismiss the Indictment.

DATED this 28th day of June, 2024.

Respectfully submitted:

s/Christopher Carney
Christopher Carney, WSBA #30325
Attorney for Defendant Keith Russell
600 1st Ave
Seattle WA 98104
Tel. 206-445-0212
Christopher.Carney@carneygillespie.com

This filing contains 4,200 words, in compliance with the local rules.

MOTION TO DISMISS CHARGE
UNDER 18 U.S.C. § 922(g)
U.S. v. Russell 23-cr-00142-TL
Page 14 of 14

CARNEY GILLESPIE
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com