**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>KEITH RUSSELL,<br><br>    Defendant. | NO. 23-cr-00142-TL<br><br>DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND FOR *FRANKS* HEARING |

## I.    SUPPLEMENTAL MEMORANDUM

By Order dated August 6, 2024, the Court directed the Parties to provide "a supplemental brief on the issue of whether police had probable cause to arrest Mr. Russell for marijuana DUI." (ECF 70). The facts of this matter do not support probable cause to arrest for DUI.[1]

### A. Factual Background

The facts of this incident are discussed thoroughly in Defendant's Motion (ECF 35 at 2-11), and Reply (ECF 48 at 2-8). As noted therein, there are significant discrepancies between the arresting officers' accounts and what is shown in the body-worn videos. In such circumstances, courts "do not credit a party's version of events that the record, such as an unchallenged video recording of the incident, 'quite clearly contradicts.'" *Rice v. Morehouse*, 989 F.3d 1112 (9th Cir.

---

[1] The Government bears the burden of proof on the issue of probable cause for a warrantless arrest. *See U.S. v. Atkins*, 983 F.2d 1077 (9th Cir. 1992), citing *Beck v. Ohio*, 379 U.S. 89, 97 (1964).

CARNEY GILLESPIE

600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

2021)(citing *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). Thus, where there is conflict, this Court should base its analysis on the videos, rather than the officers' accounts or the Government's arguments.

### B. There was no Probable Cause for Marijuana DUI

#### 1. The Odor and/or Prior Use of Marijuana Alone are not Probable Cause for DUI

The legalization of marijuana for recreational use by adults has significantly changed the Fourth Amendment landscape. Whereas, during prohibition, the odor of marijuana alone established probable cause to search a vehicle, it no longer does so where marijuana is legal. *See People v. Johnson,* 50 Cal.App.5th 620, 264 Cal.Rptr.3d 103 (Cal. App. 2020).

Furthermore, "The smell of burnt marijuana in a car, where there is no indication it had been recently smoked within, cannot by itself provide probable cause of driving under the influence of marijuana." *Blakes v. Superior Court*, 72 Cal.App.5th 904, 913, 287 Cal.Rptr.3d 799 (Cal. App. 2021). *See* also *Webb v. City of Vancouver*, C19-6081 BHS, at 20 (W.D. Wash. Nov 19, 2020) ("moderate consumption" of marijuana does not constitute probable case for driving under the influence).

The Government string-cites supposedly contrary cases (ECF 77 at 4), but these cases avail little in this context. All of the string-cited cases are readily distinguishable on their facts, involving significant additional indicia of impairment inapplicable here.[2,3] Most relate to an issue

---

[2] *See, e.g., Williams v. State Dept. of Licensing,* 46 Wn.App. 453, 454, 731 P.2d 531 (Wash. App. 1986)(in an alcohol DUI case, "Sgt. Roger Johnson of the Bremerton Police Department observed Williams traveling westbound on Kitsap Way at a high rate of speed. Sgt. Johnson pursued Williams and observed him make a left turn, run a red light, continue at a high rate of speed, and engage in erratic driving.")
[3] *See, e.g., United States v. Gearhart,* 6-23-po-00079-HBK-1, 2024 WL 2260859 at *2, 4 (E.D. Cal. May 17, 2024)(traffic stop followed a "call from dispatch of an off-duty ranger reporting an older model silver Lexus driving recklessly," which "made a sudden stop" in front of a ranger's patrol vehicle). Further, the Government



of probable cause for *alcohol* impairment, of dubious relevance even disregarding significant facts not echoed here. Further, it must be noted that the officers' accounts in the record here make no mention of smelling *burnt* marijuana, a salient fact that the Government has had ample opportunity to elicit in declarations and the officers had ample opportunity to indicate in their reports. The Government's case is weaker still in the absence of an allegation of the odor of burnt marijuana, and in either case fails to meet its burden of establishing probable cause.

Finally, even prior to legalization or in states where it has not occurred, the touchstone for the Court's analysis of probable cause in this case is *USA. v. Patzer*, 277 F.3d 1080 (9th Cir. 2002). As discussed in Defendant's Motion (ECF 35 at 20-21), *Patzer* clarifies that officers' claimed observations of "bloodshot and glassy eyes" and an admission of smoking marijuana earlier in the day are not sufficient to establish probable cause where the subject's "driving and comportment" do not corroborate the belief that the driver was impaired. The videos here show Mr. Russell driving lawfully and behaving in a reasonable manner. While the officers claim that Mr. Russell's eyes showed evidence of marijuana consumption, this is clearly belied by the video evidence. *See* ECF 36-8. Following *Patzer*, which none of the lower court cases cited by the Government could overrule even if they were relevant, these facts do not establish probable cause to arrest.

### 2. Mr. Russell's Driving Did Not Support Probable Cause for DUI

The Government repeatedly suggests that Mr. Russell's driving was somehow indicative of impairment.[4] In this regard, the Defense urges the Court to review the videos of Mr. Russell's

---

mischaracterizes *Gearhart*'s holding and that of the cases it cited, all of which had no bearing on the existence of probable cause, but rather held only that the odor of freshly burnt marijuana provided a *Terry* stop/"reasonable suspicion" basis for further investigation (*Gearhart*, at 7); the defendant in *Gearhart* was neither arrested nor charged with DUI.

[4] *See, e.g.,* ECF 77 at 2.



CARNEY
GILLESPIE

600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

driving for itself. The videos will show, as described in ECF 35 at 2-3, that Mr. Russell was not

speeding, driving erratically, swerving in his lane, or in any other way driving in any manner

connoting impairment.

The Government also claims that the manner in which Mr. Russell prepared to pull over

in response to the officers' activating their lights shows impairment. As discussed in ECF 35 at

3 and ECF 48 at 7, given the circumstances, Mr. Russell's choice to prepare for a left turn into a

parking lot was reasonable and does not show impairment. Moreover, "the Government

provides no legal authority that briefly failing to yield on its own substantiates a particularized

suspicion of criminal wrongdoing."[5] *United States v. Yates*, 23-cr-00318-AMO-1 (N.D. Cal. Jan

05, 2024).

### 3. Mr. Russell's Demeanor Did Not Support Probable Cause for DUI

While the Government has suggested that Mr. Russell was "belligerent," this contention

is simply not consistent with the video and the defense encourages the Court to make its own

evaluation of his demeanor based on the video record. Mr. Russell was coherent and responsive,

as discussed in the Motion. The videos show that the Government's repeated claim that he was

"belligerent" at any point prior to his warrantless arrest is a rhetorical exaggeration, at best. He

may have appeared nervous, but this is of no consequence to the present inquiry: "[a]ssuming for

the sake of argument that [the defendant] appeared nervous… that fact does not necessarily

support an inference of criminal behavior because '[e]ncounters with police officers are

necessarily stressful for law abiders and criminals alike.'" *United States v. Gould*, 21-cr-00475-

---

[5] See also *United States v. Jones*, 438 F.Supp.3d 1039, 1057 (N.D. Cal. 2020) (concluding that even if defendants' driving could be "characterized as 'evasive'," it did not provide reasonable suspicion to believe they "engaged in any criminal conduct").



JSW-1 (N.D. Cal. Aug 10, 2022), quoting *United States v. Chavez-Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001), overruled on other grounds by *Muehler v. Mena*, 544 U.S. 93 (2005).

### 4. Officer Lentz Admitted the Absence of Probable Cause

Perhaps the most significant evidence pointing to the lack of probable cause is the words of Officer Lentz himself. When Officer French asked Officer Lentz if he saw any evidence of impairment[6], Officer Lentz, having spoken to Mr. Russell at close range for several minutes, responded that he could not reach an opinion that Mr. Russell was impaired.[7] Following this exchange, no additional information pertinent to DUI was discovered, as there were no burnt marijuana products in the car and Mr. Russell denied recent consumption or impairment. Mr. Russell offered to perform voluntary field sobriety tests, but the officers did not administer them.[8,9] Instead, when Mr. Russell reiterated that he would perform field sobriety tests but would not consent to the search of his vehicle, the officers simply placed him under arrest.[10]

### I. CONCLUSION

Officers French and Lentz arrested Mr. Russell in the absence of probable cause. All evidence should be suppressed.

//

//

---

[6] Dkt. 45 at 5 ("When Officer French returned to the Volvo with Russell's license, he inquired of Officer Lentz about whether or not he could tell if Russell was impaired.")

[7] See Dkt. 35 at 7 and citations therein (I can't tell. I don't know.").

[8] Neither officer is a Drug Recognition Expert, though both have had training in basic field sobriety tests intended to detect alcohol use (*See* NHTSA DWI Detection and Standardized Field Sobriety Testing, Instructor Guide, at 7: "…the focus of this curriculum is on the **alcohol-impaired driver**." Located at: https://www.wsp.wa.gov/breathtest/docs/dre/manuals/SFST/SFST_basic_dwidetect/2023/SFST_Instructor_Guide_2023.pdf

[9] The Defense urges the Court to evaluate for itself the Government's claim that Mr. Russell "refused" to perform FSTs; the video will show only that he requested to lock his car before walking to the sidewalk, and that he explicitly *agreed* to perform FSTs. *See* ECF 35 at 10-11 and exhibits cited therein.

[10] Following Mr. Russell's arrest, a blood draw showed a result of 6.7 ng/ml +/- 1.7, or in other words a result that was within the scientific margin of error of the legal limit of 5.0 ng/ml.

CARNEY GILLESPIE

600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

1     DATED this 29th day of August, 2024.

2                                          Respectfully submitted:

3                                          s/Christopher Carney
                                           Christopher Carney, WSBA #30325
4                                          Attorney for Defendant Keith Russell
                                           600 1st Ave
5                                          Seattle WA 98104
                                           Tel. 206-445-0212
6                                          Christopher.Carney@carneygillespie.com

7

8                                          This filing contains 1,660 words, in
                                           compliance with the local rules.

9     .

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

