UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KEITH LAMONTE RUSSELL,<br><br>Defendant. | CASE NO. 2:23-cr-00142-TL<br><br>ORDER ON MOTION FOR RECONSIDERATION |

On November 7, 2024, this Court ordered the suppression of evidence of a firearm, blood testing, and all other evidence obtained incident to the arrest of Defendant Keith Lamonte Russell. Dkt. No. 89. This matter is before the Government's Motion for Reconsideration of that Order. Dkt. No. 96. Having reviewed Mr. Russell's response (Dkt. No. 101), the Government's reply (Dkt. No. 103), and the relevant record, and having heard oral argument (Dkt. No. 106), the Court DENIES the motion.

I. BACKGROUND

The Court assumes familiarity with the facts of the case. Relevant to the instant motion, on April 8, 2024, Mr. Russell filed a motion to suppress. Dkt. No. 35. Mr. Russell advanced multiple grounds for suppression, including that Officers Nicholas French and Matthew Lentz of the Seattle Police Department ("SPD") had unlawfully searched his vehicle in three different ways, among them when "Officer French physically moved the driver's door in order to see and question Mr. Russell about the never-lit, legal marijuana products in the map pocket." *See id.* at 17–20. Mr. Russell also argued that the officers did not have probable cause to arrest him for marijuana DUI, leaning heavily on the Ninth Circuit's decision in *United States v. Patzer*, 277 F.3d 1080 (9th Cir. 2002). *See* Dkt. No. 35 at 20–21. In its opposition filed on April 22, the Government argued that "Officer Lentz observed a pistol in plain view while standing on Aurora Avenue outside of [Mr.] Russell's Volvo," though it did not assert that any violation of federal law justified Officer Lentz's vantage point. Dkt. No. 45 at 16. It also argued that the officers had probable cause for marijuana DUI. *See id.* at 18–20. Finally, in its discussion about the duration of the stop (an issue not presented here), the Government noted in a footnote that "[w]hile Washington law permits the possession of marijuana under certain circumstances, federal law does not." *Id.* at 15 n.8.

The Court ordered an evidentiary hearing on the motion, originally scheduled for June 3. Due to no fault of either Party, the hearing was later rescheduled for September 5. Dkt. No. 54. On August 6, the Court requested supplemental briefing from the Parties "on the issue of whether police had probable cause to arrest Mr. Russell for marijuana DUI." Dkt. No. 70. Both Parties filed briefs accordingly. Dkt. Nos. 77, 78. In its brief, the Government did not assert any violation of federal law as a basis for probable cause. *See generally* Dkt. No. 77.

ORDER ON MOTION FOR RECONSIDERATION - 2

Once again, due to no fault of either Party, the evidentiary hearing was delayed and ultimately held on October 30. Dkt. No. 88. At the hearing, both officers testified that Officer Lentz did not see the firearm until Officer French pushed the driver's side door. In oral argument following testimony, the Government did not assert any violation of federal law as a basis for probable cause. *See* Dkt. No. 92 at 110:25–115:23. Moreover, the Court flagged *Patzer*, noting that the Government "didn't address it in your brief," and asked what other circumstances the Government was relying on in light of *Patzer*'s "focus on [a] driver's driving and comportment." *Id.* at 113:17–114:2. The Government pointed to observations of marijuana it previously raised. *Id.* at 114:3–8. When asked further questions (*id.* at 114:9–14), the Government argued that there was no case that required a driver to be a "bad driver" to be pulled over and arrested for DUI. *Id.* at 114:15–19. The Government ultimately leaned on its "constellation of 10 factors" to support probable cause. *Id.* at 114:21.

The Court issued its Order granting suppression on November 6. Dkt. No. 89. On November 26, the Government filed the instant motion for reconsideration. Dkt. No. 96; *see also* Dkt. No. 103. Mr. Russell opposes. Dkt. No. 101.

## II.   LEGAL STANDARD

"Motions for reconsideration are disfavored." CrR 12(b)(13). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.*

"No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). "Rather, the district court's authority to revisit a ruling on a suppression

ORDER ON MOTION FOR RECONSIDERATION - 3

motion 'is within its sound judicial discretion.'" *Id.* (quoting *United States v. Raddatz*, 447 U.S. 667, 678 n.6 (1980)).

### III. DISCUSSION

The Government makes two arguments. First, it contends that the Court committed manifest error when it held that the officers unlawfully searched Mr. Russell's vehicle, because Mr. Russell was in violation of federal marijuana laws, which provided a basis for probable cause. *See* Dkt. No. 96 at 4–9. Second, it contends that the Court overlooked facts elicited at the hearing that, in totality, supported probable cause. *See id.* at 9–12. Mr. Russell opposes on both grounds, though his opposition is devoted almost entirely to the Government's manifest-error argument. *See generally* Dkt. No. 101. The Court considers each argument in turn.

**A.     Search of the Vehicle**

**1.     Discretionary Denial**

As an initial matter, the motion will be denied because the Government was extremely dilatory in raising this argument and has no justification for being so. *See Lopez-Cruz*, 730 F.3d at 811–12 (affirming district court's denial of motion for reconsideration where court "declin[ed] to consider an argument and evidence that the government failed to raise in its opposition to the motion to suppress, in the hearing on the motion, in its briefing before the hearing, or in its supplemental briefing after the hearing on the motion"). The Government is asking the Court to consider an argument raised for the first time on a motion for reconsideration, despite multiple prior opportunities (*i.e.*, initial briefing, supplemental briefing, evidentiary hearing) to raise the issue. But as the district court in *Lopez-Cruz* explained (quoted approvingly by the Ninth Circuit), "Afterthoughts or shifting ground do not constitute an appropriate basis for reconsideration." *Id.* at 811. And the Ninth Circuit did not consider the merits of the belated argument or evidence in affirming the district court's denial.

In its motion, the Government concedes that "[its] opposition to the suppression motion should have raised *Atwater* [*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)] and *Moore* [*Virginia v. Moore*, 553 U.S. 164 (2008)] and did not do so." Dkt. No. 96 at 8. The Government then attempts to explain this failure, as it did at oral argument:

> But the findings and conclusions in the suppression order made the significance of those cases more apparent than it was before the hearing. The United States expected the hearing to show that Officer Lentz saw the firearm under Russell's car seat before Officer French moved the car door. Because the government expected to show that the firearm was in plain view, it did not focus on the marijuana in plain view. Now that the Court has found[1] that the officers saw the marijuana but not the gun before French moved the car door, the significance of the marijuana has come into focus and merits the Court's more specific consideration.

*Id.* But in its reply, the Government asserts that "[t]he body cam video also shows the marijuana in the car door before Officer French touched it" (Dkt. No. 103 at 4); at oral argument on the instant motion, the Government said it was "clear" that Officer French could see the marijuana before he pushed the door. If this were so, then it should have been clear to the Government, at every stage of this case, that at least one justification for the search might be a violation of federal marijuana laws. But it chose not to raise that argument until now, after the arguments it did make have been rejected. Even if the testimony were not as the Government expected (though the marijuana argument could have been raised in the alternative to begin with), the Government had an opportunity to argue after testimony at the evidentiary hearing, and it did not raise the issue then, either.

The Government's failure is compounded by the prejudice to Mr. Russell and the waste of judicial resources. Mr. Russell argues that "[b]ecause the Government had made no argument

---

[1] As discussed at oral argument, the Court disagrees. It did *not* find that the marijuana was in plain view; indeed, that question was not presented by either Party as relevant to any legal issue.

ORDER ON MOTION FOR RECONSIDERATION - 5

in its briefing based on *Atwater* or *Moore* or any claim of entitlement to search Mr. Russell's vehicle based solely on the presence of marijuana," he was "denied a fair opportunity to fully develop relevant testimony during the evidentiary hearing." Dkt. No. 101 at 3. Although Officer French testified that he could see the marijuana in the driver-door pocket before he pushed it (*see* Dkt. No. 92 at 49:21–25), Mr. Russell points out that "there was no incentive for defense to closely question Officer French about this claim" (Dkt. No. 101 at 4). In reply, the Government suggests that "if the Court agrees with Mr. Russell that the record on whether the marijuana was in plain view is unsettled, it should reopen the hearing, not deny reconsideration." Dkt. No. 103 at 4. For this point, the Government supplies no authority, and the Court is aware of no guidance from the Ninth Circuit on when it is or is not appropriate, or whether the Court is obligated, to reopen an evidentiary hearing in response to a motion for reconsideration of a suppression order. The Court also finds that it is not self-evident from watching the body-worn camera video of either officer that Officer French could definitively see the marijuana in the driver-door pocket before he pushed it open, so making a final determination would require reopening the evidentiary hearing. Under these circumstances, at least, it would be a waste of judicial resources to do so. And *Lopez-Cruz* seems to support the Court's position that it is not obligated to reopen the hearing for "[a]fterthoughts or shifting ground." 730 F.3d at 811.

In any event, for the reasons that follow, the Court also does not find manifest error.

**2.      Manifest Error**

The Government argues that the Court's suppression Order is manifestly erroneous under the United States Supreme Court's decisions in *Atwater* and *Moore*. Dkt. No. 96 at 3–4. Specifically, the Government contends that Officer French saw an open container of marijuana in the driver-door pocket before he pushed it, which "means that he had probable cause to arrest [Mr.] Russell for possessing marijuana before he conducted any search." Dkt. No. 96 at 6.

In *Atwater*, the Supreme Court ruled that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." 532 U.S. at 354. As *Moore* appears more consequential to the motion and received the lion's share of attention in the briefing (*see generally* Dkt. No. 103) and at oral argument, additional explanation is merited.

          **a.**     ***Virginia v. Moore***

In *Moore*, two Portsmouth, Virginia, police officers arrested David Lee Moore for driving with a suspended license. 553 U.S. at 166–67. According to Virginia law, driving on a suspended license is not an arrestable offense, and the officers should have issued Moore a summons instead. *Id.* at 167. A subsequent search incident to arrest uncovered 16 grams of crack cocaine and some cash. *Id.* at 167. Later charged with possession with intent to distribute, Moore argued that evidence of the drugs should be suppressed under the Fourth Amendment. *Id.* at 168. The Virginia Supreme Court agreed, reasoning "that since the arresting officers should have issued Moore a citation under state law, and the Fourth Amendment does not permit search incident to citation, the arrest search violated the Fourth Amendment." *Id.*

The Supreme Court reversed, ultimately holding that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176. It could find no support in history for the incorporation of state statutes into Fourth Amendment protections. *See id.* at 168–71. It noted that a warrantless arrest based on probable cause has traditionally been viewed as reasonable. *See id.* at 171 (citing, *inter alia*, *Atwater*, 532 U.S. at 354). It distinguished earlier cases that excluded evidence obtained in violation of state law, finding that "those decisions rested on our supervisory power over the federal courts, rather than the Constitution." *Id.* at 172 (citing, *inter*

ORDER ON MOTION FOR RECONSIDERATION - 7

*alia*, *United States v. Di Re*, 332 U.S. 581 (1948)). The *Moore* Court rejected Moore's argument that "a State has no interest in arrest when it has a policy against arresting for certain crimes": "That is not so, because arrest will still ensure a suspect's appearance at trial, prevent him from continuing his offense, and enable officers to investigate the incident more thoroughly." *Id.* at 173–74. Even if the State's interests changed, the *Moore* Court explained, it "would adhere to the probable-cause standard," as it creates a bright-line standard that does not vary from state to state. *Id.* at 175.

        **b.**    ***Other Authorities***

The Ninth Circuit has applied *Moore* in a couple of cases worth observing here. In *Martinez-Medina v. Holder*, an Oregon deputy sheriff detained two Mexican nationals on the basis that they were illegally present in the United States. 673 F.3d 1029, 1031–32 (9th Cir. 2011). According to Oregon law, state law enforcement agencies are prohibited from using money, equipment, or personnel to apprehend individuals for illegal presence alone. *Id.* at 1036. When an immigration officer appeared at the detention, the Mexican nationals appeared to admit their illegal presence. *Id.* at 1032. Later, in removal proceedings, they moved to suppress those statements. *Id.* Among other things, they argued that "the deputy sheriff committed an egregious Fourth Amendment violation when he seized Petitioners because he should have known he lacked authority under Oregon law to detain Petitioners." *Id.* at 1036. But the court held that "the deputy sheriff's violation of Oregon law does not constitute a violation of the Fourth Amendment." *Id.* (citing *Moore*, 553 U.S. at 173–74). It noted that the deputy sheriff "lacked the authority under Oregon law to apprehend Petitioners based solely on a violation of federal immigration law." *Id.* It assumed without deciding that he violated state law, but it ultimately concluded that the state-law violation was not a Fourth Amendment violation. *Id. See also*

*Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (applying *Moore* and concluding that violation of California arrest statute was not Fourth Amendment violation).

As to whether a state officer's search or arrest may ever be justified by probable cause for a violation of federal marijuana possession laws in a state where such possession is not unlawful under state law, there does not appear to be any controlling appellate authority directly on point, and the Parties do not identify any authorities that have applied *Moore* to that situation.

The Ninth Circuit has brushed up against the issue on at least two occasions but found reason not to address it. In *United States v. Martinez*, the court made this notable observation: "As the district court did not address whether, in light of the fact that Deputy Creager is a state officer, it would be consistent with the Fourth Amendment to consider whether there was probable cause to believe the car contained evidence of a violation of *federal* marijuana laws, we decline to decide that issue in the first instance." 811 F. App'x 396, 398 (9th Cir. 2020) (emphasis in original). *See also United States v. Gray*, 772 F. App'x 555, 567 n.2 (9th Cir. 2019) ("In light of our conclusion, we do not reach the question of whether the Government forfeited its alternative argument—that the search could be sustained based on a suspected violation of federal law—by failing to adequately raise it before the district court.").

At least one district court in this Circuit has held that federal law cannot support probable cause under such circumstances. In *United States v. Talley*, two San Francisco police officers searched Cecil Talley's vehicle after observing marijuana inside, and the search uncovered a firearm, ammunition, and several phones. 467 F. Supp. 3d 832, 833–34 (N.D. Cal. 2020). The government argued (in the alternative) that "possession of marijuana is still illegal under federal law, and thus the officers could rely on Talley's container of marijuana to believe that the vehicle contained contraband." *Id.* at 836. The court rejected that argument and held that "federal law cannot provide an alternate basis for probable cause." *Id.* at 837. "To hold otherwise," the court

ORDER ON MOTION FOR RECONSIDERATION - 9

explained, "would allow officers to disregard entirely the California legislature's directive" that no lawful activity under the state's marijuana laws could serve as a basis for search or seizure. *Id.* Further, "it would lead to the paradoxical result of allowing state law enforcement officers to defy the state laws they are entrusted with upholding so that they might enforce federal laws which they cannot be compelled to enforce." *Id.* (citing *Printz v. United States*, 521 U.S. 898, 918–19 (1997)). "Moreover, practically speaking, to permit this end-run around California's legalization scheme would grant state law enforcement officers carte blanche to disregard the Fourth Amendment rights of large numbers of California residents engaging in activity the state has deemed lawful." *Id.* "Without appellate authority compelling such a result," the court concluded, "the undersigned will not sign off on this potentially sweeping erosion of constitutional rights."[2] *Id. See also United States v. Jones*, 438 F. Supp. 3d 1039, 1054 (N.D. Cal. 2020) (noting that the police officers "are San Francisco Police Department officers charged with enforcing California law, not federal law," and declining to adopt government's argument that "the officers could rely on the smell of marijuana alone to search the car because marijuana is illegal under federal law").

Finally, the Ninth Circuit has also held that the "general rule is that local police are not precluded from enforcing federal statutes," as long as state enforcement is not preempted by federal regulation and state law authorizes that concurrent enforcement. *Gonzales v. City of Peoria*, 722 F.3d 468, 474–77 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). *See also Commonwealth v. Craan*, 13

---

[2] In their briefs, neither Talley nor the government identified *Moore* as a relevant appellate authority. *See Talley*, No. CR19-605, Dkt. Nos. 20, 23, 24 (N.D. Cal. May 12 & 26, 2020, & June 9, 2020). At oral argument here, the Government argued that *Talley* is simply wrongly decided.

N.E.3d 569, 577 (Mass. 2014) (observing the general rule in *Gonzales* and adding that "their authority to do so derives from State law").

        **c.**    ***Discussion***

Considering all the above authorities, as well as secondary sources,[3] the Court cannot conclude that its prior Order contains manifest error. Here, there is no allegation (as in *Moore*) that Officer French and Lentz acted in violation of state law. Instead, the issue is whether, in light of the fact that they are state officers, it is consistent with the Fourth Amendment to consider whether there was probable cause for a violation of *federal* marijuana laws—the very issue noted and unaddressed "in the first instance" in *Martinez*. There does not appear to be any controlling appellate authority directly on point. The Government makes a reasonable argument that *Moore* should be applied to this situation, and if the argument had been raised in a timely manner and fully briefed by both Parties in the normal course of litigation—and the testimony (with adequate and full cross-examination) had established that Officer French had indeed seen the marijuana in plain view—the Court may or may not have accepted it. But in this posture (a motion for reconsideration), the standard is manifest error, and the limited authorities available suggest, at the very least, that the answer is not clearly established.

Therefore, as to searches of the vehicle, the Government's motion is DENIED.

**B.**    **Probable Cause for Marijuana DUI**

The Government also argues that the Court overlooked certain testimony[4] that supports probable cause—namely, "evidence of impaired judgment" (violating Washington's open container law and parking in the middle of 137th Street), the presence of marijuana in the driver

---

[3] *See* Orin S. Kerr, *Cross-Enforcement of the Fourth Amendment*, 132 Harv. L. Rev. 471 (2018).

[4] At oral argument, the Government clarified that it was not arguing manifest error as to the existence of probable cause for marijuana DUI.

ORDER ON MOTION FOR RECONSIDERATION - 11

door, and Officer French's testimony that the effects of marijuana can last for hours. *See* Dkt. No. 96 at 10–12. Mr. Russell responds, "The Government in its Motion merely rehashes facts and arguments already considered and rejected by this Court." Dkt. No. 101 at 13.

In its opposition to the motion to suppress, the Government supplied a numbered list of 11 items of information that it believed supported probable cause. *See* Dkt. No. 45 at 19. In its supplemental brief on probable cause for marijuana DUI, the Government identified "a constellation of facts" that supported probable cause—a new list of 10 items that partially overlapped with the prior list. *See* Dkt. No. 77 at 2–3. At the evidentiary hearing, the Government again referred to "a constellation of 10 factors" that the officers relied upon. Dkt. No. 92 at 114:21; *see also id.* at 112:10–115:5. In its Order granting suppression, the Court walked through those 10 factors and explained why, in their totality, they did not add up to probable cause. *See* Dkt. No. 89 at 14–17. In its analysis, the Court explicitly considered Mr. Russell's parking and the presence of an open container of marijuana in the driver door.[5] *See id.* at 15, 16. Ultimately, as the Ninth Circuit similarly concluded in *Patzer*, the Court concluded here that "Mr. Russell's driving and comportment do not evidence any impairment such that his ability to drive was 'lessened to an appreciable degree.'"[6] Dkt. No. 89 at 18 (quoting WPIC 92.10). To the extent that Officer French's testimony about the effects of marijuana was not directly addressed in the Order, the Court finds that the testimony does not change its conclusion. As in *Patzer*, Mr. Russell's driving and comportment negated any inferences about effects on his

---

[5] Even if the smell of marijuana on Mr. Russell and the presence of marijuana in the vehicle tend to support probable cause (*see, e.g.*, *State v. Gillenwater*, 96 Wn. App. 667, 671, 980 P.2d 318 (1999)), Mr. Russell's driving and comportment—all personally observed by the officers in this matter and more extensive than the observations in *Gillenwater*—provided countervailing evidence that undermined probable cause. *See* Dkt. No. 89 at 14–17.

[6] In its motion, the Government briefly argues that Idaho law (at issue in *Patzer*) bears a higher standard for DUI than Washington law. *See* Dkt. No. 96 at 12. But at oral argument, the Government disclaimed any argument about manifest error. Moreover, the Court appropriately applied the Washington standard, and the difference between the two standards does not materially distinguish *Patzer*.

ability to drive, and Officer French's generalized testimony about marijuana's effects does not override those observations.

Therefore, as to probable cause for marijuana DUI, the Government's motion is DENIED.

### IV.   CONCLUSION

Accordingly, the Government's Motion for Reconsideration of Suppression Order (Dkt. No. 96) is DENIED.

Dated this 11th day of December 2024.

                                         Tana Lin
                                         United States District Judge